IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**DIEGO MATA-GONZALEZ, LILIA
LOPEZ-GUZMAN, VLADIMIR MATA-
LOPEZ, and JOHNNY MATA-LOPEZ,**

                Plaintiffs,

      v.

**MIGUEL MONICO and CITY OF
CORNELIUS**,

                Defendants.

No. 3:11-cv-00260-PK

OPINION AND ORDER

**MOSMAN, J.**,

On April 10, 2013, Magistrate Judge Papak issued his Findings and Recommendation
("F&R") [94] in the above-captioned case, in which plaintiffs brought claims of wrongful arrest,
malicious prosecution, and deprivation of substantive due process under 42 U.S.C. § 1983, as
well as a state-law malicious prosecution claim.  Judge Papak recommended that plaintiffs' third,
sixth, seventh, eighth, tenth, eleventh, fourteenth, fifteenth, sixteenth, nineteenth, twentieth, and
twenty-first enumerated claims for relief be dismissed with prejudice, and defendants' motion

1 – OPINION AND ORDER

[64] for summary judgment be granted as to plaintiffs' fourth, ninth, twelfth, thirteenth,

seventeenth, and eighteenth enumerated claims for relief and denied as to plaintiffs' first, second,

and fifth enumerated claims for relief.  Judge Papak granted plaintiffs' informal motion for

judicial notice and denied defendants' motion to strike. Defendants objected [96]. Plaintiffs did

not respond to defendants' objections.

      For the reasons set forth below, I accept Judge Papak's findings and recommendations as

to plaintiffs' second, fifth, ninth, twelfth, thirteenth, seventeenth, and eighteenth enumerated

claims for relief.  I reach a different conclusion as to plaintiffs' first and fourth enumerated

claims.

## LEGAL STANDARD

      The magistrate judge makes only recommendations to the court, to which any party may

file written objections.  I am not bound by the recommendations of the magistrate judge; instead,

I retain responsibility for making the final determination.  I am required to review de novo those

portions of the report or any specified findings or recommendations within it as to which an

objection is made.  28 U.S.C. § 636(b)(1).  However, I am not required to review, de novo or

under any other standard, the factual or legal conclusions of the magistrate judge as to those

portions of the F&R to which no party has objected.  *See Thomas v. Arn*, 474 U.S. 140, 149

(1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  While the level of

scrutiny I am required to apply to the F&R depends on whether objections have been filed, in

either case I am free to accept, reject, or modify any part of the F&R.  28 U.S.C. § 636(b)(1).

## BACKGROUND

      Except as noted below, the parties take no issue with Judge Papak's thorough account of

the factual and procedural background of this case.  I will present only a brief summary here.

A shooting incident on January 27, 2010, led Cornelius police officers to suspect Diego Mata-Gonzalez ("Diego Jr."), eldest son of plaintiffs Diego Mata-Gonzalez ("Mr. Mata-Gonzalez") and Lilia Lopez-Guzman, of the attempted murder of the victim. An eyewitness described seeing Diego Jr. fire shots in the air during the altercation, after which the victim's firearm jammed during an attempt to return fire. A second witness reported hearing Diego Jr. admit involvement in the shooting on the telephone. Based on eyewitness statements, officers obtained a warrant to search Mr. Mata-Gonzalez's home and executed it on February 4, 2010.

Officer Monico and other Cornelius police officers conducted the search. Officer Monico found a baggie containing white powder, a few small paper cups, and a baggie of what he suspected to be marijuana in Ms. Lopez-Guzman's dresser. In addition, officers found a shrine to Santa Muerte, a notebook containing records of apparent financial transactions, and a children's notebook containing what Officer Monico described as "gang writing." A blood-stained sweatshirt and a round of ammunition also turned up during the search.

Officer Monico asserts that he conducted a police-issued field test on the white powder during the search. The parties dispute whether Officer Monico actually performed the test, and, if so, whether he reported the results honestly. In any event, he avers the test led him to believe that the white powder contained cocaine. Officer Monico asserts that the shrine to Santa Muerte (whom he describes as "the patron saint of drug dealers"), the small paper cups, the notebooks, the bloody sweatshirt, and the ammunition suggested to him that Mr. Mata-Gonzalez dealt in controlled substances.

Later that same day, Officer Monico returned to the home. He spoke with Mr. Mata-Gonzalez in Spanish about the white powder. The parties' accounts diverge here. Mr. Mata-Gonzalez asserts that he tried to explain to Officer Monico that the white powder was

"cascarilla," a product of pulverized eggshell.  Officer Monico counters that Mr. Mata-Gonzalez admitted to him that the powder was cocaine.

A few days later, Officer Monico performed a second test of the white powder using the same police-issued kit.  The results were the same as the purported results of the first field test.

Per department policy, Officer Monico noted in his report that children were present at the Mata home and submitted the report to the Oregon Department of Health Services ("DHS").  His report included Mr. Mata-Gonzalez's alleged admission that the white powder was cocaine.  DHS employee Laurie Wuthrich spoke to Officer Monico regarding whether Mr. Mata-Gonzalez and Ms. Lopez-Guzman's minor children, Vladimir and Johnny Mata-Lopez, were at risk of harm.  Ms. Wuthrich visited the home on February 25, 2010.  The parties dispute whether Officer Monico accompanied her.  Based on the results of her investigation, Ms. Wuthrich removed Vladimir and Johnny from the home and placed them in foster care.

Officer Monico arrested Mr. Mata-Gonzalez on February 26, 2010.  He was released the following day, but was allowed no contact with his children and was not permitted to return to the family home.  Upon repeated requests by Mr. Mata-Gonzalez's lawyer, the white powder was tested for cocaine on April 15, 2010.  The test results were negative, and the charges against Mr. Mata-Gonzalez were immediately dropped.  The family was reunited soon afterward.

Mr. Mata-Gonzalez, Ms. Lopez-Guzman, Vladimir, and Johnny brought this action on March 1, 2011, against Officer Monico, the City of Cornelius, and numerous other defendants.  Their complaint asserted twenty-one claims for relief.  In the time between that date and the hearing on the summary judgment motion at issue here, plaintiffs voluntarily dismissed all defendants except Officer Monico and the City of Cornelius, and all claims except the following: (1) Mr. Mata-Gonzalez's claim of wrongful arrest under the Fourth Amendment, brought under

4 – OPINION AND ORDER

42 U.S.C. § 1983 ("section 1983"); (2) Mr. Mata-Gonzalez's claim of malicious prosecution under section 1983; (3) Mr. Mata-Gonzalez's claim of deprivation of substantive due process rights under the Fourteenth Amendment, brought under section 1983; (4) Mr. Mata-Gonzalez's state-law claim of malicious prosecution (against the City of Cornelius only); (5) Ms. Lopez-Guzman's claim of deprivation of substantive due process rights; (6) Vladimir's claim of wrongful arrest; (7) Vladimir's claim of deprivation of substantive due process rights; (8) Johnny's claim of wrongful arrest; and (9) Johnny's claim of deprivation of substantive due process rights.  Defendants moved for summary judgment.  Judge Papak issued an F&R [94] recommending that summary judgment be denied as to Mr. Mata-Gonzalez's wrongful arrest and malicious prosecution claims and granted as to the remaining claims.

## DISCUSSION

Defendants' principal objection to Judge Papak's F&R is that the federal, not state, standard should have been applied to the question of probable cause.  Under that standard, they contend Officer Monico had probable cause to arrest Mr. Mata-Gonzalez, and they therefore are entitled to summary judgment on the wrongful arrest and malicious prosecution claims.  For reasons set forth below, I find defendants' objection well taken with regard to the wrongful arrest claim, but largely agree with Judge Papak on the malicious prosecution claims.  I therefore grant summary judgment on the former and deny on the latter.

Judge Papak determined that Officer Monico was entitled to qualified immunity on each of plaintiffs' substantive due process claims.  I agree with this conclusion as to Ms. Lopez-Guzman's, Vladimir's, and Johnny's claims.  Because I find that Mr. Mata-Gonzalez has produced evidence of deprivation of a liberty interest that the parties did not ask Judge Papak to consider, I deny summary judgment on his substantive due process claim.

I.    <u>**Mr. Mata-Gonzalez's Section 1983 Claim of Arrest Without Probable Cause**</u>

Judge Papak determined that the Oregon definition of probable clause applies to all claims arising from Mr. Mata-Gonzalez's arrest, including his claim of wrongful arrest under the Fourth Amendment.  (F&R [94] at 18, 19.)  In Oregon malicious prosecution cases, probable cause was present if the defendant had "both a reasonable belief in the guilt of the accused as well as a subjective belief."  *Gustafson v. Payless Drug Stores Northwest, Inc.*, 269 Or. 354, 357, 525 P.2d 118, 120 (Or. 1974).  On this standard, Judge Papak found a genuine dispute of material fact as to whether Officer Monico had probable cause to believe that Mr. Mata-Gonzalez was guilty of an offense.

Defendants object to Judge Papak's conclusion that Oregon's subjective-and-objective probable cause standard applies to Mr. Mata-Gonalez's claim, rather than the purely objective federal standard.  (Objections to F&R [96] at 7, 9.)  This objection is well taken as to Mr. Mata-Gonzalez's Fourth Amendment claim.  Because I find that defendants have established probable cause to arrest Mr. Mata-Gonzalez under the federal standard, defendants are entitled to summary judgment.

A.    *The Federal Probable Cause Standard Applies.*

To lawfully arrest a person under the Fourth Amendment, a law enforcement officer must have probable cause: the officer must know facts and circumstances and possess reasonably trustworthy information that would warrant a prudent officer "in believing that the [person] had committed or was committing an offense."  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  The Ninth Circuit has defined probable cause similarly: it exists where, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability" that the arrestee had committed an offense.  *United States v. Smith*, 790

F.2d 789, 792 (9th Cir. 1989).  Whether the officer's knowledge and the information available to her amount to probable cause to arrest is a "practical, common-sense decision."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Probable cause under the Fourth Amendment is an objective inquiry.  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  The officer's subjective state of mind is not relevant in determining whether probable cause existed to support an arrest.  *Id.*

This objective federal standard applies in a section 1983 suit premised on an allegedly unlawful arrest.  To prevail on a section 1983 claim, a plaintiff must prove that the defendant deprived him of a federal statutory or constitutional right under color of law.  42 U.S.C. § 1983; *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  Whether a defendant deprived a plaintiff of his Fourth Amendment right to freedom from unreasonable seizures turns on whether the arrest was justified by probable cause or otherwise.  *Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001).  Accordingly, federal courts apply the federal, objective definition of probable cause in wrongful arrest claims under section 1983.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that, in a section 1983 suit, "an arresting officer's state of mind . . . is irrelevant to the existence of probable cause"); *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2007) (explaining that "the officer's subjective intention in exercising his discretion to arrest is immaterial" to the probable cause question in a section 1983 case).

Because the purely objective federal standard of probable cause applies to a section 1983 claim premised on an unlawful arrest, the disputed evidence of Officer Monico's subjective beliefs was not relevant.  Absent that issue, the objective evidence supports a finding of probable cause.

**B.**     ***Undisputed Evidence Establishes Probable Cause to Arrest Mr. Mata-Gonzalez.***

A law enforcement officer's actions pursuant to a warrant based on fabricated evidence violate the Fourth Amendment only if the officer's affidavit in support of the warrant is insufficient to state probable cause without the fabrication. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). If probable cause is present independent of the falsified information, the search or seizure based on the warrant is not unreasonable. Thus, where a section 1983 plaintiff makes a substantial showing that an officer included fabricated evidence in a warrant affidavit, the court should grant summary judgment if, leaving the fabrication to one side, the facts in the affidavit nevertheless state probable cause. *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995). In the event of an arrest based in part on fabricated evidence, it follows that no Fourth Amendment violation occurs if the officer's nonfabricated reasons for the arrest establish probable cause.

Here, Officer Monico arrested Mr. Mata-Gonzalez for possession of cocaine with intent to distribute. (Officer Monico's Decl. [65] at ¶ 18.) The parties have not disputed that Mr. Mata-Gonzalez made a substantial showing that Officer Monico falsified Mata-Gonzalez's admission regarding the white powder. The question then becomes whether, apart from Mr. Mata-Gonzalez's " admission," the facts available to Officer Monico established probable cause to believe that Mr. Mata-Gonzalez committed the crime of arrest.

Leaving the admission aside, the facts that Officer Monico advanced in support of Mr. Mata-Gonzalez's arrest include the following:

- The appearance of the powder, and the presence nearby of small plastic cups that Officer Monico judged were used to measure it for customers;

- The location of the powder in a dresser drawer together with a baggie of marijuana;

- The presence in the same room of a shrine to Santa Muerte, whom Officer
  Monico identifies as "the patron saint of drug traffickers";

- The presence in the same room of a notebook containing "gang writing and
  symbols" and what appeared to be documentation of drug transactions;

- Two positive cocaine field tests: one conducted on the day the powder was
  seized, and one several days later; and

- Presence of a blood-stained sweatshirt and a round of ammunition with a
  dented primer, "indicating a failed attempt to fire" it.

(Officer Monico's Decl. [65] at ¶ 18.a–h.)  The most important of these is the white powder.  Its
presence in the same drawer as a baggie of marijuana would suggest to a reasonable officer that
it too was a controlled substance.  The presence of small paper cups would further suggest that
the powder was apportioned to customers for sale.  Most critically, Officer Monico reports that
two field tests indicated to him that cocaine was present in the powder.  Judge Papak expressed
doubt as to whether the evidence established that the first field test had taken place, but found
that the record showed that Officer Monico conducted the second test, and that it allowed a good
faith belief that cocaine was present.  (F&R [94] at 21, 21 n.6.)  As Judge Papak noted, the white
powder alone was sufficient to justify a reasonable officer in entertaining a fair probability that
Mr. Mata-Gonzalez possessed cocaine with intent to distribute.  *Id.* at 21.

The other facts Officer Monico listed tend to support his assertion of probable cause.  The
simultaneous presence in the notebook of gang symbols and a ledger of outstanding debts would
suggest to a reasonable officer that the notebook was used as a pay-owe sheet.  The bloody
sweatshirt and dented bullet would call to mind the recent attempted murder in Cornelius.  As
Officer Monico observed, criminal gang activity often includes trafficking in controlled

substances.  (Officer Monico's Decl. [65] at ¶ 18.g.)  When considered together with the presence of white powder that tested positively (albeit weakly) for cocaine, these factors make out probable cause to believe that Mr. Mata-Gonzalez possessed cocaine with intent to distribute.

Because Officer Monico had the requisite probable cause, Mr. Mata-Gonzalez's arrest resulted in no deprivation of his Fourth Amendment rights.  Defendants' motion for summary judgment must be granted on Mr. Mata-Gonzalez's first enumerated claim.

## II.    __Mr. Mata-Gonzalez's Malicious Prosecution Claims__

Defendants object to Judge Papak's probable cause determination also with regard to the malicious prosecution claims.  They argue that the purely objective federal standard of probable cause, not the partially subjective Oregon standard, applies to malicious prosecution claims under section 1983, and, alternatively, that the evidence is sufficient to establish probable cause under either standard.  I find that the Oregon standard applies, and that a genuine dispute of material fact exists as to whether Officer Monico had probable cause under that standard.

I also address a point as to which no objection was raised.  Under the law of this Circuit, a section 1983 malicious prosecution claim requires proof both of the elements of the state-law tort and of intent on the defendant's part to deprive the plaintiff of a constitutional right.  The parties focused on whether prosecution without regard to guilt or innocence, without more, is a sufficient deprivation of liberty to sustain a section 1983 malicious prosecution claim.  However, I find that, if proven, Officer Monico's intent to subject Mr. Mata-Gonzalez to criminal charges based on fabricated evidence is sufficient.  A genuine dispute of fact exists on this point as well.

Finally, I agree with Judge Papak that a state probable cause standard applies to the purely state-law malicious prosecution claim against the City of Cornelius.  As with the section

1983 malicious prosecution claim, a genuine dispute exists as to whether Officer Monico had probable cause.

A. ***That Officer Monico Subjected Mr. Mata-Gonzalez to Criminal Charges Based on Fabricated Evidence Is a Sufficient Deprivation of Liberty To Sustain Mr. Mata-Gonzalez's Section 1983 Malicious Prosecution Claim.***

Judge Papak correctly found that Mr. Mata-Gonzalez produced evidence that Officer Monico intended to deprive him of a constitutional right. I agree that Mr. Mata-Gonzalez made such a showing, but it is probably worth clarifying which specific constitutional right is in question.

A claim of malicious prosecution is usually not cognizable under section 1983 as long as the plaintiff has access to a remedy in the state courts. *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985). However, where the plaintiff shows that the defendant intended to "deprive [him] of equal protection of the laws or . . . otherwise intended to subject [him] to a denial of constitutional rights," a malicious prosecution claim will lie under section 1983. *Id.* In addition to the elements of malicious prosecution, then, a section 1983 plaintiff must also prove that the defendant intended to deprive him of a federal constitutional right.

The core of the malicious prosecution claim presented below is that Officer Monico "may have intended to initiate criminal proceedings against [Mr. Mata-Gonzalez] without regard to [his] guilt or innocence," and that this was sufficient to make out a section 1983 malicious prosecution claim. (F&R [94] at 25.) But the problem is that "prosecution without regard to guilt or innocence" is virtually coterminous with malicious prosecution. *See* Restatement (Second) of Torts § 668 cmt. e (1977) (explaining that an officer who does not believe in the accused's guilt does not have a proper purpose for instituting criminal proceedings). If this is sufficient to invoke the exception in *Bretz*, then the *Bretz* exception is as large as malicious

prosecution itself, and every malicious prosecution claim is a section 1983 claim. If the only

deprivation Mr. Mata-Gonzalez were able to show is initiation of criminal proceedings without

regard to his guilt or innocence, he cannot make out a section 1983 malicious prosecution claim.

Mr. Mata-Gonzalez's claim, however, invokes a liberty interest that is cognizable under

section 1983. The Fourteenth Amendment guarantees freedom from criminal charges premised

on fabricated evidence. *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001). This

right is invaded if, at a minimum, "(1) Defendants continued their investigation of [the plaintiff]

despite the fact that they knew or should have known that he was innocent; or (2) Defendants

used investigative techniques that were so coercive and abusive that they knew or should have

known that those techniques would yield false information." *Id.* at 1076. Reasoning that this

right is "virtually self-evident," the Ninth Circuit held that it is clearly established for qualified

immunity purposes. *Id.* at 1074–75.

This court recently allowed a section 1983 malicious prosecution suit to proceed where

the plaintiff presented evidence that the defendant police officer intended to induce criminal

charges against him through false testimony. *Evans v. Multnomah Cnty.*, No. 07-1532, 2009 WL

1011580, at *13 (D. Or. Apr. 15, 2009), *reversed on other grounds by* 492 F. App'x 756 (9th Cir.

2012). Other courts have endorsed similar suits where law enforcement officers and prosecutors

pursued criminal charges against plaintiffs based on fabricated evidence. *See Bretz*, 773 F.2d at

1031 (holding section 1983 malicious prosecution claim cognizable on allegations of a

conspiracy to conceal and falsify evidence); *Baker v. Rodriguez*, No. 11-138, 2012 WL 137461,

at *4 (C.D. Cal. Jan. 17, 2012) (holding claim cognizable on allegations of a conspiracy to "keep

[plaintiff] in jail as long as possible," where conspirators committed perjury at trial and withheld

exculpatory evidence); *Watson v. Albin*, 551 F. Supp. 2d 954, 960 (N.D. Cal. 2008) (finding

detention and resisting arrest charge based on an officer's false statements a sufficient deprivation of liberty to support a section 1983 malicious prosecution claim).

The allegations in the complaint and the evidence of record, construed in the light most favorable to plaintiffs, are sufficient at this stage to show that Officer Monico intended to subject Mr. Mata-Gonzalez to criminal charges based on fabricated evidence. In his second enumerated claim, Mr. Mata-Gonzalez alleges that Officer Monico forwarded false cocaine field test results to the Washington County District Attorney, resulting in Mr. Mata-Gonzalez's prosecution. (Complaint [1] at ¶ 47.) Elsewhere in the complaint, Mr. Mata-Gonzalez alleges that Officer Monico falsely stated in his police report that Mr. Mata-Gonzalez admitted to possessing cocaine. *Id.* at ¶ 30. That Mr. Mata-Gonzalez was charged is undisputed. The parties vigorously contest whether Officer Monico manipulated the field test results in bad faith or included false information in his report, and a reasonable juror could find for Mr. Mata-Gonzalez on one, the other, or both. Either act is sufficient under *Devereaux* to result in a deprivation of liberty. Mr. Mata-Gonzalez's malicious prosecution claim therefore makes out a sufficient invasion of a constitutional right to proceed under section 1983.

`B.    ***Defendants' Objections Regarding Judge Papak's Probable Cause Analysis Are Not Well Taken.***

In all, defendants raised four grounds for objection with regard to Judge Papak's approach to probable cause:

1.   Use of a partially subjective standard rather than a purely objective standard;

2.   Failure to excise allegedly falsified evidence from the probable cause analysis;

3.   Failure to consider the evidence of probable cause under the totality of the circumstances; and

4.   Use of an incorrect standard to determine whether belief in guilt was reasonable.

(Objections to F&R [96] at 2.) [1]

My conclusion that the objective federal standard applies to Mr. Mata-Gonzalez's Fourth

Amendment wrongful arrest claim disposes of the rest of defendant's objections as they apply to

that claim. Discussion of each of the objections is necessary with regard to the malicious

prosecution claims.

> **1.     Oregon's Subjective-and-Objective Standard of Probable Cause Applies to Mr. Mata-Gonzalez's Section 1983 Claim of Malicious Prosecution.**

Defendant contends that the purely objective federal probable cause standard applies not

only to Mr. Mata-Gonzalez's wrongful arrest claim, but also to his section 1983 malicious

prosecution claim. (Objections to F&R [96] at 7.)

A claim of malicious prosecution under section 1983 consists of two subparts: a state-law

malicious prosecution claim, and intent on the defendant's part to deprive the plaintiff of a

constitutional right. *Ambrose v. Coffey*, 696 F. Supp. 2d 1119, 1138 (E.D. Cal. 2010); *see also*

*Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987) (applying the California-law

elements of malicious prosecution to a section 1983 claim). State law provides the elements of

the malicious prosecution claim. *Id.*

In Oregon, the elements of malicious prosecution are as follows:

(1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; 4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution.

---

[1] In their summary of argument, defendants also listed Judge Papak's "[m]aking credibility determinations" as part of his probable cause analysis as a basis of their objection. (Objections to F&R [96] at 2.) They do not refer to this ground again in their memorandum, except in passing. *Id.* at 8. As Judge Papak himself noted in his F&R, courts may not determine witness's credibility at summary judgment. *E.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990). However, Judge Papak made no credibility determinations. He referred to Officer Monico's credibility several times, but only to observe that a reasonable factfinder at trial might find his credibility lacking. (F&R [94] at 21, 23.)

*Rose v. Whitbeck*, 277 Or. 791, 795, 562 P.2d 188, 190 (Or. 1977), *mod. on other grounds by Rose v. Whitbeck*, 278 Or. 463, 564 P. 2d 671 (Or. 1977); *Singh v. McLaughlin*, 255 Or. App. 340, 352, 297 P.3d 514, 522 (Or. Ct. App. 2013); *Blandino v. Fischel*, 179 Or. App. 185, 190–91, 39 P.3d 258, 261–62 (Or. Ct. App. 2002).  Oregon case law sets out a standard for the probable case inquiry: probable cause for an arrest exists if the officer had "a reasonable belief in the guilt of the accused as well as a subjective belief." *Gustafson*, 269 Or. at 357, 525 P.2d at 120.

It strikes me as axiomatic that in determining whether a state law element is met, a federal court must apply a state law standard.  Other federal courts seem to have reached a similar conclusion, in that they apply state law to determine whether probable cause exists in a malicious prosecution action under section 1983.  *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (holding that, under California law, plaintiff could overcome the state magistrate's determination of probable cause by showing that corruption, fraud, or other bad faith conduct induced the prosecution); *Haupt v. Dillard*, 17 F.3d 285, 290 (9th Cir. 1994) (holding that plaintiff was estopped to allege lack of probable cause by the Nevada criminal court's determination that probable cause was present).

I agree with Judge Papak's conclusion that Oregon's subjective-and-objective probable cause standard applies to Mr. Mata-Gonzalez's section 1983 malicious prosecution claim.  This disposes of defendants' first objection.  This conclusion also disposes of their objections that Judge Papak failed to regard the evidence in its totality and to determine whether Officer Monico's belief in Mr. Mata-Gonzalez's guilt was reasonable.  (Objections to F&R [96] at 13–15.) These objections are premised on the improper application of the federal, objective standard of probable cause.  *Id.* at 8.

>    2.    **Disputed, Allegedly Falsified Evidence Is Not Excised from the Probable Cause Determination in an Oregon Malicious Prosecution Action**

In addition to arguing that the purely objective federal standard applies, defendants also argue that Judge Papak erred in failing to excise Officer Monico's allegedly false statements before addressing probable cause.  However, all but two of the cases that defendants rely upon for this proposition arose from claims under the Fourth Amendment.[2]  In both exceptions, the Tenth Circuit held, as defendants urge, that the plaintiff in a section 1983 malicious prosecution action bore the burden of proving that the evidence allegedly falsified by the defendant was necessary to the determination of probable cause.  *Pierce v. Gilchrist*, 359 F.3d 1279, 1295 (10th Cir. 2004); *Woldford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).  However, the Tenth Circuit differs from the Ninth in that it does not incorporate state law elements into a section 1983 malicious prosecution claim.  *See Pierce*, 359 F.3d at 1295–96 (noting that "the common law provides only an analogy to the constitutional claim" and "federal standards are ultimately dispositive").  In this Circuit, a section 1983 malicious prosecution claim incorporates the elements of the state law tort, which, in Oregon, includes a partially subjective probable cause standard.

I can find no support in Oregon law for the contention that allegedly false statements offered to support probable cause must be excised in a malicious prosecution action.[3]  In any event, such a requirement would be at odds with the subjective-belief half of the Oregon

---

[2] *See Liston v. County of Riverside*, 120 F.3d 965, 968 (9th Cir. 1997); *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1118 (9th Cir. 1997); *Hervey v. Estes*, 65 F.3d 784, 787 (9th Cir. 1995); *Mills v. Graves*, 930 F.2d 729, 731 (9th Cir. 1991); *Stewart v. Donges*, 915 F.2d 572, 573 (10th Cir. 1990); *Guerrero v. City and County of San Francisco*, No. 00-1247, 2003 WL 22749099 at *5 (N.D. Cal. Nov. 18, 2003).

[3] Oregon case law does provide that the defendant's having pursued charges despite knowing that they were false is sufficient to show lack of probable cause.  *Hryciuk v. Robinson*, 213 Or. 542, 561, 326 P.2d 424, 433 (Or. 1958); *Drake v. Anderson*, 215 Or. 291, 295–96, 334 P.2d 477, 479 (Or. 1959).  Moreover, that the defendant "procured another to swear to a false complaint" has the same effect.  *Hryciuk*, 213 Or. at 561, 326 P.2d at 433.  These cases support, if not conclusively, the contention that the defendant's alleged fabrication of evidence may be considered in determining probable cause.

probable cause standard.  Courts infer beliefs from actions.  Fabrication of evidence is perhaps

the kind of action most strongly probative of a lack of belief in guilt.  On the other hand, where

only objective reasonableness is concerned, whether the officer fabricated evidence is irrelevant

to the question of whether a belief in the arrestee's guilt is reasonable.  Because the Oregon

probable cause standard includes a subjective belief prong, I conclude that Judge Papak was

correct in considering Officer Monico's alleged fabrication of evidence.

> ### 3.    Judge Papak Correctly Found a Genuine Question of Fact as to Whether Officer Monico Subjectively Believed in Mr. Mata-Gonzalez's Guilt

Whether the defendant lacked probable cause in an Oregon malicious prosecution action

is initially "a question of law to be decided by the court."  *Lambert v. Sears, Roebuck & Co.*, 280

Or. 123, 128, 570 P.2d 357, 360 (Or. 1977) (citing *Delp v. Zapp's Stores*, 238 Or. 538, 542, 395

P.2d 137, 139 (1964)).  The evidence must be considered in the light most favorable to the

plaintiff.  *Id.* (citing *Fleet v. May Dep't Stores, Inc.*, 262 Or. 592, 598 n.1, 500 P.2d 1054, 1058

(1972)).  If the facts that defendant asserts give rise to probable cause are in dispute, "the

question of probable cause must go to the jury with proper instructions from the court."  *Drake*,

215 Or. at 298, 334 P.2d at 480.

In Oregon, an arresting officer had probable cause if he had "a reasonable belief in the

guilt of the accused as well as a subjective belief."  *Gustafson*, 269 Or. at 357, 525 P.2d at 120.

Judge Papak found a genuine dispute of fact as to both the objective and subjective prongs.

(F&R [94] at 23.)  I agree with Judge Papak that a genuine dispute exists as to whether Officer

Monico subjectively believed that Mr. Mata-Gonzalez had committed the offense of arrest.

Whether Officer Monico's alleged fabrications must be excised when the objective

reasonableness of his belief is considered is unclear to me.  I anticipate further guidance from the parties on this point as the trial approaches.

Defendants argue that the evidence establishes probable cause even under Oregon's partially subjective standard, because whether Officer Monico fabricated evidence is merely "a disputed fact." (Objections to F&R [96] at 18.)  This argument misapprehends the standard of proof at summary judgment.  If a genuine dispute exists as to a material fact, then the claim should proceed to trial.  Fed. R. Civ. P. 56(a).  Here, Judge Papak found that plaintiffs produced sufficient evidence of Officer Monico's fabrication of evidence to allow a reasonable juror to find in their favor.  (F&R [94] at 26.)  Precisely because defendants dispute this point, summary judgment must be denied.  *See Drake*, 215 Or. at 298, 334 P.2d at 480.

Plaintiffs' state law malicious prosecution claim will proceed as well.  Defendants' objections apply to Mr. Gonzalez's state law claim as well as his section 1983 claim, (Objections to F&R [96] at 7,) and are rejected for the same reasons.

### III.    <u>Plaintiffs' Substantive Due Process Claims</u>

Plaintiffs' complaint sets out four claims for relief premised on violations of their substantive due process rights: one on behalf of Mr. Mata-Gonzalez, one on behalf of Ms. Lopez-Guzman, one on behalf of Vladimir, and one on behalf of Johnny.  (Complaint [1] at ¶¶ 55–60, ¶¶ 86–91, ¶¶ 109–14, ¶¶ 140–45.)  Judge Papak set out the substantive liberty interest in question as "the right to continued enjoyment of the parent-child relationship free of governmental interference premised on fabricated evidence." (F&R [94] at 30.)  Finding that Officer Monico was entitled to qualified immunity on the due process claims, Judge Papak recommended that I grant defendants' motion for summary judgment with respect to them.  *Id.* at 31.  I agree.  I write further to consider Mr. Mata-Gonzalez's due process claim alleging a

deprivation of his right to be free from criminal investigation and prosecution based on fabricated evidence. Because that right was clearly established at all pertinent times, Officer Monico is not entitled to qualified immunity or to summary judgment on Mr. Mata-Gonzalez's claim.

### A.    *Substantive Liberty Interests at Issue*

Both parents and children have a substantive liberty interest in freedom from government interference with the parent-child relationship. *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987) *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 685–86 (9th Cir. 2001) (both mother and child stated a section 1983 claim based on the substantive liberty interest in the family relationship). Parsed more finely, parties to the parent-child relationship have a right to be free from civil intervention in that relationship based on fabricated evidence. *Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101, 1113–14 (9th Cir. 2010). However, the Ninth Circuit determined that the right defined in *Costanich* did not become clearly established for qualified immunity purposes until the opinion was issued. *Id.* at 1114. That date is December 3, 2010. *Id.* at 1101.

The Fourteenth Amendment also guarantees freedom from criminal charges premised on fabricated evidence. *Devereaux*, 263 F.3d at 1074–75. At minimum, the plaintiff must show that the defendant investigated her despite knowledge or a reason to know that she was innocent, or that the defendants knew or should have known that they used techniques so coercive as to yield false information. *Id.* at 1076. The Ninth Circuit held that this liberty interest is clearly established for qualified immunity purposes, because a reasonable police officer would understand it to be obvious. *Id.* at 1074–75.

**B.**      *Ms. Lopez-Guzman's, Vladimir's, and Johnny's Claims*

Of the two liberty interests discussed above, Ms. Lopez-Guzman, Vladimir, and Johnny allege a deprivation only of their right to freedom from interference with the parent-child relationship.  (Complaint [1] at ¶¶ 87, 110, 141.)  Indeed, it is the only one of the two that they could allege, as only Mr. Mata-Gonzalez was subject to criminal charges.  As Judge Papak found, a genuine question of fact exists as to whether Officer Monico interfered with the Matas' family relationship by knowingly supplying DHS with false information.  (F&R [94] at 30.)  However, Judge Papak also correctly concluded that this interest was not clearly established as of February 2010, when Officer Monico's alleged falsifications are to have occurred.  *Id.* at 31.  Officer Monico is therefore entitled to qualified immunity on Ms. Lopez-Guzman's, Vladimir's, and Johnny's claims, and summary judgment in his favor is required.[4]

**C.**      *Mr. Mata-Gonzalez's Claim*

In addition to freedom from interference with the parent-child relationship, Mr. Mata-Gonzalez's substantive due process claim also alleges a deprivation of his right to freedom from criminal charges based on fabricated evidence.  The complaint's fourth enumerated claim refers to his "right to a fair and just criminal process," and alleges that Officer Monico (and other defendants no longer in the case) "charged [him] with crimes he had not committed, knowing that the drug evidence was falsified."  (Complaint [1] at ¶¶ 56, 57.5.)  These allegations, as well as plaintiffs' general allegation that Officer Monico operated under color of law at all relevant times, *id.* at ¶ 9, suffice to make out a claim of deprivation of the right not to be subjected to criminal prosecution based on fabricated evidence.  The claim survives summary judgment as well.  As Judge Papak concluded, a genuine question of fact exists as to whether Officer Monico

---

[4] Judge Papak recommended that I grant summary judgment on Vladimir's and Johnny's wrongful arrest claims on the basis of qualified immunity as well, because these claims also rested on Officer Monico's forwarding allegedly falsified information to DHS.  (F&R [94] at 31–32.)  I agree with these findings and adopt his recommendation.

lied about Mr. Mata-Gonzalez's admitting to cocaine possession.  (F&R [94] at 22.)  That

Officer Monico acted under color of law and that Mr. Mata-Gonzalez faced criminal charges are

undisputed.  *Id.* at 18, 26.  Moreover, because the right to freedom from criminal prosecution

based on false evidence was clearly established as of February 2010, *Devereaux*, 263 F.3d at

1070, 1074–75, Officer Monico is not entitled to qualified immunity.  Summary judgment on

Mr. Mata-Gonzalez's substantive due process claim therefore must be denied.

**IV.**      **Defendants' Motion To Strike and Plaintiffs' Abandonment of Certain Claims**

I agree with Judge Papak's findings concerning defendants' motion to strike, and adopt

his recommendation that the motion be denied.  (F&R [94] at 16.)  I also adopt Judge Papak's

recommendation that plaintiffs' third, sixth, seventh, eighth, tenth, eleventh, fourteenth, fifteenth,

sixteenth, nineteenth, twentieth, and twenty-first enumerated claims be dismissed with prejudice.

*Id.* at 14–15.


**CONCLUSION**

Because I find that Officer Monico had probable cause to arrest Mr. Mata-Gonzalez

under the Fourth Amendment, defendants' motion for summary judgment [64] as to plaintiffs'

first enumerated claim is GRANTED.  Defendants' motion for summary judgment [64] as to

plaintiffs' second and fifth enumerated claims is DENIED, because I hold that Oregon's standard

of probable cause applies to these claims and that Mr. Mata-Gonzalez has shown a sufficient

deprivation of liberty to sustain a section 1983 malicious prosecution claim.  Finally, because

suffering criminal charges based on falsified evidence is a deprivation of a substantive liberty

interest, I DENY defendants' motion for summary judgment [64] as to plaintiffs' fourth

enumerated claim. In all other respects, I ADOPT Judge Papak's Findings and

Recommendations [94].

IT IS SO ORDERED.

DATED this __27th__ day of September, 2013.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge